Su Yue Hu v 251 W. 36th St. Owner LLC (2025 NY Slip Op 51327(U))

[*1]

Su Yue Hu v 251 W. 36th St. Owner LLC

2025 NY Slip Op 51327(U)

Decided on August 25, 2025

Supreme Court, Queens County

Cruz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 25, 2025
Supreme Court, Queens County

Su Yue Hu, Plaintiff,

against
251 West 36th Street Owner LLC, Defendant

Index No. 700293/2018

For the Plaintiff, Su Yue Hu: Nancy Lewis, Esq.
Pollack, Pollack, Isaac & DeCicco, LLP
250 Broadway, Suite 600
New York, NY 10007
Of Counsel to Lipsig, Shapey, Moverman, Freund & Wisell, PLLC
40 Fulton Street, 24th Floor
New York, NY 10038
For Defendant 251 WEST 36TH STREET OWNER LLC:
Michael J. Pearsall, Esq.
350 Fifth Avenue, 7th Floor New York, NY, 10118
Of Counsel
Christopher R. Theobalt, Esq.
Sarah Pavlini, Esq.
Kahana & Feld LLP
800 Third Avenue, 16th Floor New York, New York 10022

Lumarie Maldonado Cruz, J.

PAPERS NUMBERED
Defendant's Post Trial Motion, Affidavit/Affirmation in Support,
Exhibits, Affidavit of Service, Affirmation in Reply w/ Exhibits EF 68-75, 79-81 
Affidavit in Opposition, Memorandum of Law, Affidavit of Service
Sur-Reply EF 76-78, 82
At issue is whether a seven (7) million dollars jury award for a bimalleolar ankle fracture is against the weight of the evidence and/or excessive, according to prevailing jurisprudence in the Second Department. Upon the foregoing papers, and for the reasons that follow, it is ordered that Defendant's motion is denied in part and granted in part. 
The following electronically ("EF") filed documents were read on by Defendant 251 West 36th Street Owner, LLC.'s motion for an order setting aside the jury verdict. Defendant argues that the verdict should be (1) set aside as against the weight of the evidence and the case dismissed; or (2) the jury's verdict should be set aside and a new trial on all issues ordered; or (3) a remittitur of the pain and suffering award to a low six-figure amount should be ordered. [*2]Plaintiff opposes the motion.
In 2014, according to the trial testimony, the Plaintiff and Defendant entered into a lease agreement for a commercial space located at 251 West 36th St., New York, New York,[FN1]
where the Plaintiff operated a deli. [FN2]
The Plaintiff, whose primary language is Mandarin, was assisted by a Mandarin-speaking attorney during lease negotiations.[FN3]
The air conditioning unit, located in the mezzanine outside the commercial space, serviced only the deli and was not known to be leaking prior to the accident. [FN4]
Additionally, the air conditioning unit was not accessible to the Plaintiff and only the "maintenance staff" of the building had the keys to gain access.
On May 28, 2016, Plaintiff slipped and fell on water leaking from that air conditioning unit and suffered a bimalleolar ankle fracture.[FN5]
The fracture required two surgeries: (1) an open reduction internal fixation (ORIF) surgery with plates and screws; and later (2) a second surgery to remove the hardware due to pain.
Following the liability phase of trial, the jury found Defendant 100% liable for Plaintiff's injuries.[FN6]

At the damages phase, Plaintiff testified after her fall, she initially went home via a taxi,[FN7]
rather than to the hospital and only visited the Emergency Room (ER) the night after the accident.[FN8]
Her surgery was delayed due to swelling. Plaintiff refused offered at-home nursing care [FN9]
after the surgery was performed and did not see any doctors between the accident and the second surgery. [FN10]
Plaintiff testified that she was very anxious and worried about how the surgery would change her life style, specifically, whether she would walk with a limp or have to use a cane every day.[FN11]
Despite her injury, she continued working at the deli with minimal [*3]assistance.[FN12]
.
Dr. Elan Goldwyn performed her open reduction internal fixation or ORIF surgery in June 2016 [FN13]
and testified that there were no complications with the surgery and that the Plaintiff's ankle was left in a good anatomical position after placing two (2) surgical plates and eight (8) screws, but that there was a risk — not a certainty- of Plaintiff developing post-traumatic arthritis. [FN14]
Dr. Goldwyn further testified that this type of fracture involves not only the bones, but also the joint itself, affecting the entire ankle.[FN15]
Dr. Goldwyn opined that Plaintiff may require an ankle fusion in the future, but confirmed that he had no knowledge of her condition after June 2016.
Plaintiff testified she returned to work several times a week after the accident, and within four months from the surgery she resumed full-time work—16 to 17 hours per day, as she did before the fall, preparing the deli food and maintaining the store. [FN16]
When asked her feelings about her deli, Plaintiff testified the store represented the American dream and the possibility for a better life for her and her daughter.[FN17]
Plaintiff testified she did not attend formal physical therapy due to her work obligations and that she was told by her doctor she could exercise at home.[FN18]
This Court understand that, based on Plaintiff's own testimony, she believes that the lifestyle she worked so hard to build was shattered as the result of the accident. However, the record is devoid of any support or indicia that Plaintiff cannot resume a normal life. Moreover, Plaintiff testified that she often gave free food to loyal customers.[FN19]
While admirable, Plaintiff's actions may have contributed to the decline of her business. As such, the accident cannot be considered the sole reason for the decline of Plaintiff's deli.
According to Dr. Jeffrey Kaplan, Plaintiff's orthopedic surgeon, he first treated Plaintiff in December 2017 and later performed the second surgery in May 2018 to remove the hardware and a bone spur. [FN20]
He testified that Plaintiff presented with pain, swelling, and limited range of motion. [FN21]
Although he observed post-traumatic arthritis, he stated that future surgery was only a possibility, not a medical certainty and could be treated with anti-inflammatory medication and [*4]physical therapy. [FN22]
Dr. Kaplan did not see Plaintiff again until the summer of 2023 and again in January 2025, prior to the trial.[FN23]

The defense called Dr. Edward Toriello, who had not performed surgery since 2007 [FN24]
and who examined Plaintiff for the defense. He found a mostly normal range of motion with some swelling but opined that no further medical care was necessary and that her fracture had healed well. [FN25]
[FN26]

In sum, the medical testimony established that Plaintiff had healed as well as possible and did not establish the likelihood of future surgery, only a plausibility.
Plaintiff testified that she only takes Tylenol occasionally,[FN27]
does not undergo physical therapy, is not under continuing medical care,[FN28]
and does not rely on assistive walking devices except when in significant pain. [FN29]
She is no longer able to jog, travel, or wear shorts due to the ankle scar and feels ashamed. [FN30]
She closed her deli in 2018 due to her inability to travel to Flushing Queens to buy less expensive fruits and vegetables,[FN31]
but now works part-time at a supermarket earning $19 per hour.[FN32]

Under CPLR § 4404(a), the Court may set aside a jury verdict and order judgment as a matter of law or a new trial if the verdict is against the weight of the evidence or is otherwise unjust. Under CPLR § 5501(c), the Court may reduce an award it finds excessive defined as one that "materially deviates from what would be reasonable compensation." Id.
After the damages verdict and in response to Defendant's oral application to reduce the verdict, Plaintiff's counsel cited Kromah v. 2265 Davidson Realty LLC., 169 AD3d 539 (1st Dep't 2019), to justify the jury's $7 million award. In that case, Plaintiff, who suffered a Tri-malleolar ankle fracture with an obliterated fibula, completely torn and destroyed deltoid [*5]ligaments, and had severe nerve damage, underwent two (2) surgeries and developed traumatic arthritis and reflex sympathetic dystrophy — a condition so painful that amputation is a medically acceptable solution. The jury awarded Plaintiff in that case $1,600,000 for past pain and suffering and $4,500,000 for future pain and suffering and $2,547,054 for future medical expenses. Defendant appealed arguing the award was inconsistent with what is reasonable compensation for plaintiff's injuries and was against the weight of the evidence. The Appellate Court there held that there was no evidence presented to substantiate the benefit or the necessity for radiofrequency sympathectomy. However, the Appellate Court did find credible medical testimony that a spinal cord stimulator could be used to treat plaintiff's reflex sympathetic dystrophy. Notwithstanding, the First Department " . . . based on the law and facts, vacate[d] the award for future medical expenses . . . " [FN33]
and remanded the matter for a new trial on damages only, unless a stipulation was entered accepting the reduction.
Kromah is distinguishable from the case at bar in that Plaintiff here never developed severe post-injury or post-surgery dysfunctions. On the contrary, the record reflects that Plaintiff, who is 57 years old, resumed work shortly after surgery and never stopped working, did not pursue rehabilitative care, and does not suffer from debilitating limitations. Finally, the medical testimony here failed to establish that future surgery is probable, and current treatment is minimal with over-the-counter medication.
It is Defendant's contention that even if Plaintiff sustained similar injuries as the plaintiff in Kromah, a $7,000,000 jury award deviates materially from controlling Second Department decisions.
Specifically, Defendant's point to Montefusco v Main Street L.I., LLC., 190 AD3d 727 (2nd Dep't 2021) where the 64-year-old plaintiff suffered a Tri-malleolar ankle fracture and the court affirmed an award of $285,000 for pain and suffering to support the contention that the jury award here is excessive. 
Likewise Defendant's relies on Blair v Coleman, 211 AD3d 671 (2nd Dep't 2022) where a 51 year-old Plaintiff with first and second metatarsal fractures with mid-foot fracture and dislocation of the right foot, a fracture of the 11th rib; a fractured sternum; right clavicle and first lumbar bone was awarded 1.14 million and the Second Department directed a remittitur to $800,000 in pain and suffering, to support their contention that the jury award here is excessive. 
Another example is Diaz v Dabado, 174 AD3d 787 (2nd Dep't 2019) where the Appellate Division Second Department affirmed the jury award of $230,000 in pain and suffering for a Plaintiff sustaining a fibula fracture dislocation and a ruptured deltoid and syndesmotic ligaments between the tibia and fibula and suffering post-operative cerebral spinal fluid leak causing severe headaches and requiring further medical intervention and lifetime consequences. The jury award here of seven million ($7,000.000) is excessive given the state of the law and facts in the case at bar.
There is no question this Court is bound, under the stare decisis, to follow the precedents set by the Appellate Division Second Department and acknowledges that it erred in accepting Plaintiff's reliance on Kromah and in reducing the verdict to only $6 million. The Appellate Division Second Department cases cited herein are instructive for awards for the Plaintiff's comparable injuries.
Accordingly, it is 
Ordered, this Court finds that the $6 million award deviates materially from what would be considered reasonable compensation for comparable injuries within the Second Department and modifies the prior award to $300,000 for past pain and suffering and $450,000 for future pain and suffering as a reasonable compensation; and it is further
Ordered, that Defendant's remaining arguments are unavailing and thus DENIED; and it is further
Ordered, that any other requested relief not expressly addressed herein has nonetheless been considered by this Court and is hereby denied; and it is further 
Ordered, that a copy of this Order, a Stipulation to Remittitur with Notice of must be served by Defendant, on all parties, within twenty (20) days of Entry by First class mail and NYSCEF; and it is further
Ordered, that failure to submit such Stipulation of Remittitur, will result in a new trial for damages and in that event, parties are to contact this Court for the purposes of availability and scheduling.
This constitutes the Decision and Order of the Court.
Dated: August 25, 2025
Queens, NY
Hon. Lumarie Maldonado Cruz, J.S.C.

Footnotes

Footnote 1:See Exhibit C. T.138

Footnote 2:"T_ " indicates the trial transcript and page where testimony may be located (See, T. 139)

Footnote 3:T. 141

Footnote 4:T. 142, 160, 263 - 264

Footnote 5:She commenced this action in January 2018, seeking damages.

Footnote 6:T. 305

Footnote 7:T. 412 - 413, 433

Footnote 8:T. 434

Footnote 9:T. 435

Footnote 10:T. 413

Footnote 11:T. 416 - 417

Footnote 12:T. 417

Footnote 13:T. 454 - 455

Footnote 14:T. 457-459, 461

Footnote 15:T. 453

Footnote 16:T. 422, 436 - 437

Footnote 17:T. 431

Footnote 18:T. 424 - 427

Footnote 19:T. 438

Footnote 20:T. 381

Footnote 21:T. 377

Footnote 22:T. 383, 386

Footnote 23:T. 385 - 386

Footnote 24:T. 473

Footnote 25:T. 471

Footnote 26:A IME Watch Dog rebuttal witness testified that contrary to Dr. Toriello's testimony, Plaintiff's physical examination only lasted 3 minutes.

Footnote 27:T. 431

Footnote 28:T. 440

Footnote 29:T. 441

Footnote 30:T. 433

Footnote 31:T. 437 - 438

Footnote 32:T. 430

Footnote 33:See, Kromah v 2265 Davidson Realty LLC, 169 AD3d 540 (2nd Dep't 2019).